PEDRO CASANOVAS-ARBONA, Representing his minor son PEDRO J. CASANOVAS DÍAZ, Plaintiff and Appellee, *v.* PONCE ELECTRIC COMPANY, Defendant and Appellant.

No. 4181. Argued June 15, 1927.—Decided April 30, 1928.

*Hartzell, Kelly & Hartzell* and *R. F. Fernandes* for the appellant. *Arjona & Arjona* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Pedro Casanovas, as father with *patria postestas* over his son Pedro Antonio Casanovas Díaz, brought an action against the Ponce Electric Company, a corporation organized under the laws of Porto Rico and engaged in the transportation of passengers by motor vehicles, to recover thirty thousand dollars as damages.

After some preliminary questions had been disposed of the case went to trial. The court rendered judgment that the defendant pay to the plaintiff the sum of two thousand dollars together with costs and attorney's fees. The defendant appealed from that judgment and in its brief assigns six errors.

The first assignment reads as follows: "The district court committed error in overruling in some of its particulars the motion to strike made against the original complaint."

In fact a motion was made to strike from the complaint the allegations "both parties having the necessary legal capacity to sue and be sued" and "because he is a minor" on the ground that they were conclusions of law, and also the so-called second cause of action, because it was contrary to the rule that all damages suffered by a person in consequence of a single tortious act shall give occasion to only one cause of action. The court overruled the motion.

In his brief the appellee answered only that as it appeared from the assignment itself that the motion to strike was made in relation to the original complaint and that after an amended complaint had been filed the motion was not renewed, there was no right to raise the question in this court.

It is well known that an amended complaint takes the place of the original complaint and after it is filed the original complaint ceases to have any further effect as such

pleading. There are exceptions to this rule, but the case of the appellant does not come under them. See *Vellon v. Central Pasto Viejo,* 37 P.R.R. 531.

Anyhow, even granting that the defendant was right and that the motion to strike should have been sustained, the error committed by the court in overruling it has not been shown to be prejudicial and therefore could not serve as a basis for reversal of the judgment. What follows will make this conclusion still clearer.

The appellant contends that the trial court erred in finding that the defendant did not show negligence on the part of Pedro A. Casanovas Díaz.

It quotes the following paragraph from the opinion on which the judgment appealed from was based:

"The defendant has insisted that the son of the plaintiff was guilty of negligence and that his negligence was the cause of the accident because he attempted to board the bus while it was in motion. The burden of proving contributory negligence on the part of the plaintiff falls on the defendant (Maldonado v. Hamilton, 32 P.R.R. 208; González v. Malgor, Luiña & Co., 29 P.R.R. 97) and the court finds that the defendant has not proved such negligence on the part of the plaintiff."

The defendant contends that it can not comprehend how the court could reach that conclusion when it produced five ocular witnesses whose testimony shows that there was negligence on the part of Casanovas.

The court did not say that no evidence had been produced in regard to the negligence of Casanovas, but that "the defendant has not proved such negligence." There was no error.

In the third assignment it is alleged that the court erroneously adjusted the conflict in the evidence.

In its opinion the trial court stated its findings as follows:

"That at 9 p. m. on October 31, 1925, the son of the plaintiff, Pedro Antonio Casanovas Díaz, twenty years of age, was near the corner of Villa and Progreso streets of Ponce in company with Pas-

tor Medina with whom he had left the theater shortly before; that they were standing with other persons looking at a dance in the house of the Salinas family; that at that moment there came along Villa street going towards the Ponce race track a bus of the defendant company driven by chauffeur Pedro Sierra and carrying several passengers, among them policeman Segundo Pacheco who was standing near the chauffeur; that the plaintiff's son, leaving the group, made a signal to the chauffeur of the bus to stop, and the latter, in answer to that signal, slowed down and stopped the vehicle, and then the plaintiff's son attempted to board the bus, placing one foot on the step to the only door of the said vehicle situated at the front right-hand side; that at that very moment the bus started suddenly, causing the said Pedro A. Casanovas Díaz to lose his balance and fall to the ground, his right leg being caught by the right rear wheel of the bus; that the wheel of the vehicle did not run over the plaintiff's son, but only dragged him; that the plaintiff's son got up from the ground and, helped by other persons, climbed into the same bus which went on its journey to the race track, and on its return to town the plaintiff's son was taken to the San Lucas hospital where he was attended by Dr. Costas who found that the leg of the young man had not been fractured but bruised, or, as testified by Dr. Costas, severely bruised, which caused the swelling of the leg with internal hemorrhage and stoppage of the circulation, and this caused a deficiency of the nutrition of the leg, which became atrophied; that after the first treatments the plaintiff's son remained for five days in the said hospital and was then taken to his home where he continued under the care of Dr. Costas and Dr. Osvaldo Goico; that it became necessary to cut away the dead tissues where the leg had been bruised (which can be seen graphically from the photographs admitted in evidence by the court); that the said tissues were substituted by cicatricial tissue, for, according to the testimony of the said doctors, the plaintiff's son was in danger of an embolism and that gangrene might ensue; that although the bruise received by the plaintiff's son did not cause the fracture of his leg, it is a fact, which the court considers proved, that he has suffered severe physical pain and has had to undergo extensive medical treatment, and that at the time of the trial and according to the expert medical testimony on both sides, the flexion and extension capacity of the injured leg had been diminished between twenty and twenty-five per cent.''

The court then refers to new expert testimony and says:

"All of this new expert testimony corroborates and ratifies the conclusion reached by the court that even though Pedro A. Casa-novas Díaz did not sustain any fracture of his leg, there is no doubt that he received a bruise of such a serious nature that even one year after the accident he was confined to bed, suffering intense pain and having to submit to medical treatment, and that when he is able to get up and go out he is compelled to use crutches, having the extension and flexion capacities of the injured leg diminished by twenty per cent, if not permanently, for a length of time which according to the experts is considered indefinite." ·

Then follows the paragraph which was transcribed in discussing the second assignment of error and the court continues as follows:

"The court has adjusted the conflict in the evidence in favor of the plantiff, because it considers that his witnesses were in a better position to judge of the manner in which the accident happened for they were in the street and facing the scene of the accident, while the witnesses for the defendant, except one, were passengers who were inside of the bus and could not be similarly situated to witness the details of the accident. Further still, the testimony of the witnesses for the defendant, Pedro Sierra, the chauffeur, and policeman Pacheco, who was a passenger in the bus standing near the chauffeur, ratifies the evidence of the plaintiff and partly corroborates it. Chauffeur Sierra testified that when approaching the place of the accident 'a young man came out to board the bus, but he did not see that he made any signal.' If he did not see him make any signal, why does he say that he came out to board the bus and that it was the policeman who called his attention to the accident, as testified by him shortly afterwards? Policeman Pacheco testified 'that he saw that Casanovas Díaz made a stop signal.to the chauffeur and that the latter then slowed down.' and that it was then that the plaintiff's son tried to catch the bus and fell. If the policeman, who was just by the side of the chauffeur, saw when the plaintiff's son made the stop signal to the chauffeur, is it to be admitted as a fact that the said chauffeur did not see him if the policeman says that the chauffeur slowed down the speed of the jitney? We think not. Nor has the court given any credence to the statement of the chauffeur and of the policeman that the only door of the bus was closed, for it is incredible that anybody would try to climb

into any vehicle either at a standstill or when moving if the only door of access is closed.''

The attorney for the appellant analyzes in his brief the evidence examined in relation to the declaration of facts proved and the reasons stated in his opinion by the trial judge in a truly admirable manner. However, after a careful study of the record and a full discussion by the justices in conference, we do not feel authorized to hold that the trial court abused its discretion in adjusting the conflict in the evidence in favor of the plaintiff. That court expressed clearly in its opinion the mental process followed and it may be mistaken in some of its findings, but at the bottom there is only a question of credibility of the witnesses, of conviction on the part of the trier, and we have said repeatedly that the court which directly tries the case is in a better position than we are to form that conviction.

The fourth assignment of error raises an interesting question of evidence. The appellant contends that the court erred in not admitting the testimony of witness Julio Arce called by the defendant to prove the custom of the plaintiff of boarding the busses of the defendant while they were moving.

All of the force of the argument of the appellant rests on the reasoning of the Supreme Court of California in the case of *Craven* v. *Central Pacific R. R. Co.*, 72 Cal. 345.

The essential part of that reasoning is as follows:

"There is no doubt of the general rule applicable to criminal cases that, on the trial of a defendant for the particular crime charged, evidence of the commission by him of other crimes cannot be introduced. The same rule seems to apply in civil cases, when it is sought to show that some specific act was done maliciously, or that it was done intentionally with some definite purpose, and not carelessly from mere force of habit. But when, in the absence of any question of evil intent, or of any intent at all, the point of fact to be determined is, whether or not a person did a certain thing, or did it in a particular way, and the direct testimony as to the fact is conflicting, then evidence is admissible to show that he was in the

habit of doing the thing in question, or accustom'ed to do it in a particular way. A sensible man, called upon, out of court, to determine whether or not a certain person had on a certain occasion carelessly jumped off a moving train of cars, and finding the direct testimony as to the matter conflicting, would naturally and properly give *some* weight to the fact that the person was in the habit of alighting from cars in that manner; and the consideration of such a fact in cases resembling the one at bar has frequently been sanctioned *in* court. The evidence, at least, had some legal tendency to show that plaintiff's conduct at the time of the injury was such as defendant ascribed to her.''

It seems well to refer to the manner in which the accident in the present case occurred. As shown by the record, the defendant called witness Arce and after some preliminary questions the interrogatory continued as follows:

''Q.—Do you know this young man? A.—Yes. Q.—What is his name? A.—His family name is Casanovas. I do not know his first name. Q.—Have you seen him before? A.—Yes. Q.—Did you know this young man before October, 1925? A.—Of course, I have known him for a long time. Q.—Was he in the habit of traveling in the busses of the company, of using those busses? A.—Very frequently. Q.—While you were on duty on those busses has he boarded them? A.—Several times he rode with me. Q.—Tell the court how that young man was accustomed to take those busses. A.—Well, while I was on duty sometimes he would stop and signal the bus to stop.''

The plaintiff objected to further interrogatories. A discussion arose between the attorneys about the legal question involved and the court ruled in favor of the plaintiff. The witness retired and the defendant noted an exception.

The jurisprudence on that point is very abundant. The question has been raised under various circumstances and has occupied the attention of the courts many times. Like all those questions that are on the dividing line, its solution has been a cause for doubts, each case having been influenced by the concurring circumstances. It can not be denied that acts on previous occasions may throw much light on what

happened in the case actually under investigation, but experience shows that it is extremely risky to gauge the present by the past. The rule can not be taken as infallible, and to apply it in the hearing of the evidence as a matter of law would perhaps produce more harm than good. At most the admission or suppression of it should be left to the discretion of the court to be exercised according to the peculiar circumstances of each case.

After an examination of the circumstances surrounding the present case in the light of this theory and of the jurisprudence on the subject, a summary of which is taken from Corpus Juris, it can not be concluded that the district court committed error in acting as it did.

That jurisprudence is as follows:

"Although complicated by the exercise of volition, it is still a proposition of experience, exemplified in the creation of habit and consequently of character, that a person is more apt to do than not to do under similar circumstances what he has done before. It is equally deducible from experience that in proportion as volition is eliminated identical conduct results from similar stimuli and that, as in other parts of the natural world, similar causes produce like results. The doing of similar acts or the occurrence of similar events is to that extent probative, on an issue as to whether a particular act was done by the same person or a like occurrence happened at another time. But experience also demonstrates that the inference is in itself a weak one; that men do not invariably or even in the great majority of instances do as they have done before, where the conditions are apparently similar, and that, still more often, the absence of a former element or the presence of a new factor in a psychological or physical combination of causes suffices to produce a very different result. Courts have felt that in such cases the jury could not well be permitted to consider the inference at all without giving it undue importance; that, so far as the consideration of similar acts or occurrences had weight, it would probably be overestimated. They have also realized the practical inconvenience of trying a number of collateral issues at the same time, and the mischief of protracting trials, surprising, and otherwise prejudicing litigants, by permitting the use of evidence so well calculated as to bewilder and mislead a jury. Hence the rule is that it is within the discre-

tion of the court, except under special circumstances, to reject evidence of former acts or occurrences as proof that a particular act was done or a certain occurrence happened. These reasons for this administrative rule, however, limit the scope of the operation of the rule itself. No such absolute prohibition against the evidence, where relevant, exists as in case of unsworn statement offered as proof of the facts asserted. The admissibility of the evidence, so far as relevancy itself is concerned, varies with the ratio of danger and advantage, increasing as relevancy grows stronger, and as the probability that other and better evidence is procurable or that the jury will be misled by the evidence offered grows weaker, and diminishing, in turn, as relevancy grows weaker, and as the probability of procuring better evidence or that the jury may be misled increases. The difficulty, for example, relating to the raising of collateral issues is a purely practical one. There is no rule of law which prevents trying such issues, and it is within the court's discretion to permit it to be done in a given instance, subject to review in case of abuse.

"The general rule is that the law will not consider evidence that a person has done a certain act at a particular time as probative of a contention that he has done a similar act at another time. Accordingly, it cannot be shown, as bearing on the question of negligence on a particular occasion that the person whose conduct is involved has met with a number of similar accidents or has been guilty of negligence on other occasions, especially where such other occurrences are remote in point of time; and conversely, one cannot show that he was careful on a particular occasion by evidence that he was careful and prudent on other occasions." 22 Corpus Juris, 743.

The fifth assignment of error is that in assessing the damages the court took into account expenses which were not alleged nor proved by the plaintiff, which is contrary to the jurisprudence holding that—

"As a general rule, expenses paid or incurred by reason of defendant's wrongful act are regarded as special damages which must be alleged in order that they may be proved." 17 Corpus Juris, 1017.

After a careful study of the case and of various decisions on the matter the trial court said in its opinion:

" . . . the damages suffered by the plaintiff's son by reason of his injured leg in the manner described in this opinion, together

with the sums he might have earned *and the expenses incurred by him,* he is entitled to a compensation of $1,000, and likewise by reason of his physical pains during his long confinement and mental suffering, as well as by reason of the present condition of the injured person, which are also elements that should be considered by the court (Carrero v. Morales, 34 P. R. R. 324), he is entitled to an additional compensation of $1,000."

It is the words italicized by us which were the origin of the assignment of error.

Apart from the fact that even disregarding the element "expenses" the indemnity allowed would be a reasonable one, the complaint alleges that the plaintiff was confined in the San Lucas hospital and submitted to medical and surgical treatments requiring the taking of radiographs; that he uses crutches and had to buy drugs for his treatments, and that is sufficient.

Although the evidence could have been more specific, it shows the existence of the facts alleged and supplies at least the necessary basis for concluding that there had been expenses.

The case of *Carrero* v. *Morales,* 34 P.R.R. 324, cited by the trial court as authority for the second part of the compensation, may also be invoked to sustain the first. But we repeat that the point is of no importance, because the judgment is supported even if we strike out the element "expenses" on the ground of its not having been properly alleged and proved.

Lastly, the sixth assignment attacks the allowance of costs. The careful consideration given to this case leads us to the conclusion that we are not in a position to hold that the trial court abused its discretional power in imposing on the defendant the costs of the litigation.

The judgment appealed from must be affirmed.

Mr. Justice Texidor took no part in the decision of this case.